UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PEDRO RUIZ,

                Plaintiff,                        **MEMORANDUM AND ORDER**
                                                         16-CV-6073 & 16-CV-6074 (PKC)(SJB)
          -against-

THE CITY OF NEW YORK, DOCTOR MORSI
SHAABAN, DOCTOR ROSS MACDONALD,
and "PHYSICIANS ASSISTANT ('CHICO')",

                Defendants.
-------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Pedro Ruiz, appearing *pro se* and proceeding *in forma pauperis*, brings this consolidated action pursuant to 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment in connection with his conditions of confinement and medical treatment in prison. For the reasons stated herein, Defendants' motion to dismiss as to *Ruiz v. The City of New York et al.*, Dkt. 16-CV-6073 (hereinafter "*Ruiz I*"), is denied. Plaintiff has voluntarily withdrawn his claims in *Ruiz v. New York and Hospitals Corporation Personal Injuries et al.*, Dkt. 16-CV-6074 (hereinafter "*Ruiz II*"), and, therefore, *Ruiz II* is dismissed.

## BACKGROUND

**I.    Relevant Facts**[1]

      In July 2013, while Plaintiff was in the custody of the New York City Department of Correction ("DOC") at Rikers Island ("Rikers"), Plaintiff fell and injured his back. (June 6, 2017

---

[1] In light of the voluntary dismissal of *Ruiz II*, the Court will recite only the facts relevant to *Ruiz I*. In deciding a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), the Court must assume as true the allegations in the complaint. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306-07 (2d Cir. 2015). The facts in this section are taken from Plaintiff's initial written complaint (Dkt. 1), the Amended Complaint (Dkt. 16), and the transcript of the June 6, 2017 pre-motion conference before this Court (Dkt. 28). (*See* 6/6/18 minute entry.)

Pre-Motion Conference Hearing Transcript ("Tr."), Dkt. 28, at 3:14-21; Complaint ("Compl."), Dkt. 1, at 9.) Plaintiff received medical treatment for his injuries while in DOC custody, and was later released. (Tr. 11:3-4.) Between July 8, 2014 and January 13, 2015, while Plaintiff was out of custody, he received treatment at New York University Hospital Center for his injuries and was diagnosed with foraminal stenosis[2] and torticollis[3]. (Compl., at 8-23.)[4] Plaintiff alleges that he was later diagnosed with a hernia, a herniated disc, as well as spinal stenosis[5]. (Amended Complaint ("Am. Compl."), Dkt. 16, at 4; Tr. 10:20-24.)

In early 2015, Plaintiff returned to DOC custody at Rikers as a pre-trial detainee, where he received additional medical treatment for his health conditions, including pain medication and referrals for a pain specialist, neurosurgery, and physical therapy. (Compl., at 27-32; Am. Compl., at 4; 4/16/18 minute entry.) However, in addition to his medical treatment, Plaintiff also requested a second mattress because "this thing that is used for a mattress [at Rikers] . . . caused [him] back pain, extreme back pain[;] and [his] neck pain . . . increased more than before." (Am. Compl., at 4.) Plaintiff alleges that between March 2015 and July 2016, he "went to the [prison medical]

---

[2] "Foraminal Stenosis" is the narrowing of the cervical disc space caused by enlargement of a joint in the spinal canal. Spine-Health, "Foraminal Stenosis" (last visited Aug. 15, 2018), https://www.spine-health.com/glossary/foraminal-stenosis.

[3] "Torticollis" is a problem involving the muscles of the neck that causes the head to tilt down. WebMD, "What is Torticollis?" (last visited Aug. 15, 2018), https://www.webmd.com/parenting/baby/what-is-torticollis#1.

[4] Except for the Hearing Transcript, page numbers refer to the pagination generated by the court's CM/ECF docketing system, and not the document's internal pagination.

[5] "Spinal stenosis" is a narrowing of the spaces within the spine, putting pressure on the nerves that travel through the spine. Mayo Clinic, "Spinal Stenosis" (last visited Aug. 15, 2018), https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961.

clinic everyday requesting a double mattress[6] to no avail." (*Id.*; Tr. 4:1-7.) During one visit to the clinic, Plaintiff saw Defendant Dr. Morsi Shaaban, the head of medical services at Rikers, who "said to [Plaintiff's] face, you cannot have two mattresses." (Tr. 4:21-23, 6:5-17.) On another occasion, Plaintiff went to the clinic and spoke with Defendant "Chico", a physician's assistant who worked under Dr. Shaaban's supervision, about his back pain and requested two mattresses. After speaking with Dr. Shaaban, Chico told Plaintiff that he could not have two mattresses. (*Id.* at 6:18-7:25.)[7] A nurse administrator[8] then handed Plaintiff a copy of a policy, approved on April 4, 2016 by Defendant Dr. Ross MacDonald, the Chief of Medicine for Correctional Health Services, which stated that, "[m]edical staff shall not write referrals for 'double mattresses.'" (Compl., at 33; Tr. 4:10-20, 5:6-10; *see generally* Dkt. 18.) The policy also stated, *inter alia*,

> PROCEDURE:
>
> 1. There is no medically accepted standard establishing a medical need for two mattresses instead of one. The distinction between one or two mattresses is not a medical issue and medical staff should not write referrals regarding special bedding.
>    . . .
> 3. Pursuant to this policy, any referrals by medical staff for double mattresses shall be considered void by the Department of Correction.

(Compl., at 33.)

On May 7, 2016, Plaintiff filed an inmate grievance, stating that he needed a "[]special mattress" for his "[]special condition." (*Id.* at 24.) On May 21, 2016, Plaintiff filed a request for a second medical opinion, stating that he "was not issued two mattresses by DOC [although] I

---

[6] "A double mattress is simply two mattresses placed one on top of the other." *DeAngelis v. Farinella*, No. 3:16-CV-307 (MPS), 2017 WL 4683996, at *6 (D. Conn. Oct. 18, 2017).

[7] As discussed *infra*, the date of these two conversations is unknown.

[8] Plaintiff withdrew his claims against the unidentified nurse administrator at the June 6, 2017 pre-motion conference. (6/6/17 minute entry.)

3

specifically have this medical condition and DOC knows about my condition" and "I have all the necessary medical documents need to authenticate my claim." (*Id.* at 25.) On June 9, 2016, Plaintiff's request for a second opinion was denied because "[the DOC] do[es] not issue double mattresses. Policy attached." (*Id.* at 26.) A copy of the April 4, 2016 policy was included. However, at an appointment on June 27, 2016, Daniel Ashitey, a physician's assistant at Rikers, made an internal referral to the DOC, stating "PLEASE KINDLY GIVE PATIENT DOUBLE MATTRESS; allow to keep till discharge. Medical reasons." (Dkt. 31-1, at 2.) Plaintiff was later transferred from Rikers. (Compl., at 4.)

Plaintiff states that being denied a double mattress caused him increased neck and back pain, loss of sleep, discomfort, mental anguish, and emotional distress. (Am. Compl., at 4.) Plaintiff seeks $75,000 in compensatory damages. (*Id.* at 5.)

## II. Procedural History

On October 29, 2016, Plaintiff filed his initial complaint in *Ruiz I* and amended his complaint on February 21, 2017. (*Ruiz I*, Dkts. 1, 16.) On June 6, 2017, at a pre-motion conference, the Court permitted Plaintiff to orally amend his complaint to add the City of New York as a defendant. (*Ruiz I*, 6/6/17 minute entry.) Defendants filed their motion to dismiss on September 15, 2017. (*Ruiz I*, Dkt. 33.)

On October 31, 2016, Plaintiff filed the operative complaint in *Ruiz II*. (*Ruiz II*, Dkt. 1.)[9] Defendant Shaaban, who is a defendant in both actions, filed a motion to dismiss in *Ruiz II* on April 18, 2017. (*Ruiz II*, Dkt. 17.) The Court consolidated the cases on February 23, 2018. (*Ruiz*

---

[9] In *Ruiz II*, Plaintiff alleged that Dr. Shaaban was deliberately indifferent to Plaintiff's medical needs when he refused to prescribe Plaintiff his preferred pain medication for his back pain, and instead prescribed Plaintiff a different muscle relaxer. (*Ruiz II*, Dkt 1; *see also* Tr. 11:22-12:2.)

4

*I & II*, 2/23/18 docket entry.) On April 16, 2018, the Court held oral argument on both motions to dismiss. At the conclusion of the hearing, Plaintiff voluntarily withdrew his claims in *Ruiz II*, and the Court denied Defendants' motion to dismiss in *Ruiz I*. (*Ruiz I*, 4/16/18 minute entry.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

**DISCUSSION**

**I.     Conditions of Confinement Claim (Individual Defendants)**

Plaintiff argues that Defendants Dr. MacDonald, Dr. Shaaban, and Physician Assistant "Chico" were deliberately indifferent to Plaintiff's conditions of confinement when they denied him a double mattress. "'A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment,' which requires 'a showing that the officers acted with deliberate indifference to the challenged conditions.'" *Sanders v. City of New York*, No. 16-CV-7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)). The standard of deliberate indifference "includes both subjective and objective components." *Laurent v. Borecky*, No. 17-CV-3300 (PKC)(LB), 2018 WL 2973386, at *3 (E.D.N.Y. June 12, 2018). "[O]bjectively, the alleged deprivation must be sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). Under the Fourteenth Amendment, the "'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively," *Darnell*, 849 F.3d at 35; therefore, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety[,]" *id.*; *see Rivera v. John Doe (PM) Intake Area Sergeant*, No. 16-CV-8809 (PAE)(BCM), 2018 WL 1449538, at *8 (S.D.N.Y. Feb. 26, 2018), *report and recommendation adopted sub nom. Rivera v. Doe*, No. 16-CV-8809 (PAE)(BCM), 2018 WL 1441386 (S.D.N.Y. Mar. 22, 2018) (under Fourteenth Amendment, test is "whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety'") (citation omitted).

The Second Circuit has held that the condition of a detainee's or inmate's mattress "may be so inadequate as to constitute an unconstitutional deprivation." *Rodriguez v. City of N.Y.*, No. 15-CV-7945 (ALC), 2018 WL 1276826, at *4 (S.D.N.Y. Mar. 9, 2018) (quoting *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013)). In order to state an unconstitutional conditions of confinement claim based on inadequate bedding, a plaintiff must plead "(1) he had a medical condition requiring a non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety." *Id*. (citation omitted).

### A. Defendants Shaaban and Chico

Plaintiff clearly satisfies the first three factors to allege a conditions of confinement claim based on inadequate bedding. With respect to the first factor, Plaintiff had a medical condition for which he required a non-standard bed, as evidenced by the fact that he was prescribed a double mattress by a prison physician assistant. This fact is also sufficient to satisfy the objective prong of a conditions of confinement claim. *See White v. Schriro*, No. 16-CV-6769 (PAE)(JCF), 2017 WL 3268202, at *1, 4 (S.D.N.Y. July 31, 2017), *report and recommendation adopted,* No. 16-CV-6769 (PAE)(JCF), 2018 WL 1384506 (S.D.N.Y. Mar. 16, 2018) (complaint was "sufficient to satisfy the objective prong" of a conditions of confinement claim where plaintiff alleged that physician "wrote a referral form" requesting that plaintiff be given a firm mattress). With respect to the second and third factors, Plaintiff went to the prison medical clinic every day for over a year to request a double mattress for his pain, thereby making his condition known to prison officials, including Defendants Shaaban and Chico.

With respect to the fourth factor, it is not clear from the face of Plaintiff's complaint

whether Defendants Shaaban and Chico knew that Plaintiff had been prescribed a double mattress at the time that they denied Plaintiff's request. (*See* Defendants' Reply Brief, ("Defs.' Reply Br."), Dkt. 35, at 4.) However, taking into consideration the frequency of Plaintiff's visits to the medical clinic—including the fact that Plaintiff continued to visit the medical clinic daily until July 2016, which was after he had been prescribed a double mattress in June 2016—and liberally construing Plaintiff's complaint, the Court infers that Defendants Shaaban and Chico knew or should have known that Plaintiff had been prescribed a double mattress for his condition. Therefore, the Court finds that Plaintiff has adequately pled that Defendants Shaaban and Chico disregarded an excessive risk to his health or safety by denying him a double mattress even though it had been medically prescribed.[10] *Harris,* 2015 WL 10427865, at *1, 4 (finding that plaintiff sufficiently pled deliberate indifference where prison officials ignored a doctor's note that "requested that [plaintiff] be allowed a double mattress due to chronic lumbago") (internal quotation marks and citations omitted); *Rodriguez*, 2018 WL 1276826, at *4 (finding that plaintiff sufficiently pled deliberate indifference where "[h]is [health] condition was known to the Defendants through his

---

[10] These allegations are sufficient to satisfy the fourth factor of the analysis, even though, as Defendants correctly state, the policy barring double mattresses was already in effect at the time Plaintiff was prescribed a double mattress. (Defs.' Reply Br., at 3-4 (noting that the policy was put into effect in April 2016, but Plaintiff was not prescribed a double mattress until two months later)); *see Harris v. Moore*, No. 15-CV-1608 (PAE)(JCF), 2015 WL 10427865, at *4 (S.D.N.Y. Dec. 3, 2015), *report and recommendation adopted,* No. 15-CV-1608 (PAE)(JCF), 2016 WL 908146 (S.D.N.Y. Mar. 2, 2016) (holding that although "the policy at [the prison] prohibited double mattresses for inmates", where "plaintiff attempted to show the defendants his medical referral, which stated his injury and authorized the additional mattress . . . and defendants remained unwilling to either examine the document or listen to the plaintiff's request[,] . . . it is reasonable to infer deliberate indifference towards the plaintiff's preexisting injury . . . [and] therefore [Plaintiff] meets the subjective requirements for a conditions-of-confinement cause of action"); *cf. Howard v. City of N.Y.*, No. 12-CV-4069 (PAE)(JCF), 2012 WL 7050623, at *8 (S.D.N.Y. Dec. 20, 2012), *report and recommendation adopted as modified*, No. 12-CV-4069, 2013 WL 504164 (S.D.N.Y. Feb. 11, 2013) (stating that a plaintiff establishes a "properly pled constitutional violation" where he or she "allege facts showing that there is a policy of refusing to provide non-standard beds, even in cases of medical necessity").

Correctional Health Services medical records" and he requested "a second mattress or a replacement mattress because the single mattress provided to him caused him serious physical pain . . . and exacerbated the pain and discomfort caused by his existing disability, but Defendants denied his repeated requests for the second mattress or replacement mattress, despite knowledge of his condition") (citations, emphasis, and internal quotation marks omitted); *Ivey v. City of N.Y.*, No. 12-CV-3580 (PAE)(JCF), 2013 WL 6838954, at *8 (S.D.N.Y. Dec. 12, 2013) (granting plaintiff leave to add a prison medical official as a defendant where the plaintiff sufficiently alleged, and corroborated, that "two doctors at the [prison] examined him and recommended an extra pillow and a double mattress" to treat his physical injuries, thereby providing "a plausible inference that [the prison official] was aware that [plaintiff] had a medical condition, that this condition required a special bed, and that his request for such a bed was denied"). Therefore, the Court finds that Plaintiff has sufficiently pled a conditions of confinement claim against Defendants Shaaban and Chico, and Defendants' motion to dismiss is denied as to this claim.

### B. Defendant MacDonald

Although Defendant Dr. MacDonald never personally treated Plaintiff, Plaintiff alleges that MacDonald also acted with deliberate indifference by approving the April 24, 2016 policy voiding medical referrals for double mattresses. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)). "The personal involvement of a supervisory defendant may be shown by evidence that . . . the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright*, 21 F.3d at 501).

9

Here, it is undisputed that Dr. MacDonald either created the double mattress policy himself, or "allowed the continuance of [the DOC] policy" by approving the ban on referrals for double mattresses. *See Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009). Therefore, Defendants' motion to dismiss is denied as to this claim.

## II.  Deliberate Indifference to Serious Medical Needs Claim (against the individual Defendants)

Plaintiff also alleges that Dr. MacDonald, Dr. Shaaban, and Chico were deliberately indifferent to Plaintiff's serious medical needs when they denied him a double mattress. "Courts treat claims involving inadequate mattresses as both conditions-of-confinement claims and denial of adequate medical care claims." *Walker v. Cty. of Nassau*, No. 2:15-CV-4794 (JFB)(SIL), Docket No. 27, at 26 n.4 (E.D.N.Y. Aug. 8, 2016), *report and recommendation adopted*, No. 15-CV-4794 (JFB)(SIL), 2016 WL 5338546 (E.D.N.Y. Sept. 22, 2016); *see, e.g.*, *Howard*, 2012 WL 7050623, at *4 (analyzing plaintiffs' claims that they were denied an appropriate bed as both a conditions-of-confinement claim and a denial of adequate medical care claim). A denial of adequate medical care claim "has objective and subjective prongs similar to those required in the conditions claim[.]" *Howard*, 2012 WL 7050623, at *6. Moreover, a plaintiff must adequately plead the same four factors, described *supra*, to state a deliberate indifference to serious medical needs claim based on inadequate bedding. *Walker*, 2016 WL 5338546, at *3. "[R]egardless of how the claim is classified, the plaintiff must allege that the defendant acted with deliberate indifference." *Walker*, Dkt. 27, at 26 n.4.

### A.  Defendants Shaaban and Chico

For substantially the same reasons stated above, the Court finds that Plaintiff has also adequately pled a deliberate indifference to serious medical needs claim against Defendants Shaaban and Chico.

With respect to this claim, the Court further notes that, according to Plaintiff, in response to asking Defendants for a double mattress, they had a nurse administrator give Plaintiff a copy of the policy banning referrals for double mattresses. Therefore, liberally construing Plaintiff's complaint and drawing all inferences in his favor, the Court finds that he has sufficiently alleged that Defendants Shaaban and Chico's denial of a second mattress was "based solely on [the DOC] policy of limiting inmates to a single mattress" and not on "independent medical judgment", and that the denial was not "otherwise consistent with professional norms such that it would amount to a mere 'disagreement over the proper treatment'". *Walker*, 2016 WL 5338546, at *2-3 (denying motion to dismiss deliberate indifference to medical needs claim where plaintiff "allege[d] that he complained of extreme pain, but [defendant-doctor] refused to order an extra mattress[,] . . . stating that by order of the Sheriff he was not allowed to order a second mattress[,] and that [second defendant-doctor] stated that she would not violate the sheriff's policy by ordering a second mattress, notwithstanding medical need") (citations omitted). Although disagreements regarding medical treatment are generally not actionable under section 1983, "judgments that have no sound medical basis [and] contravene professional norms . . . may provide the basis of a claim." *Stevens v. Goord,* 535 F. Supp. 2d 373, 388 (S.D.N.Y. 2008); *see also Walker*, 2016 WL 5338546, at *2 (collecting cases). Therefore, Defendants' motion to dismiss Plaintiff's claim of deliberate indifference to medical needs as to Defendants Shaaban and Chico is denied.

### B. Defendant MacDonald

For the reasons stated in Section (I)(B), Defendants' motion to dismiss is denied as to this claim.

## III. *Monell* Liability (City of New York)

In addition to his claims against the individual Defendants, Plaintiff also states a claim for

11

municipal liability against the City of New York. To state a claim for municipal liability under section 1983, a plaintiff must make factual allegations that support a plausible inference that there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A "municipal policy or custom" may be implemented through a "policy statement, ordinance, regulation, or decision that is officially promulgated by a municipality's policy makers." *Anthony v. City of N.Y.*, 339 F.3d 129, 139 (2d Cir. 2003) (quoting *Monell*, 436 U.S. at 690). In order to establish *Monell* liability based on inadequate bedding, a plaintiff must "plead facts demonstrating that the individuals who denied him the mattress worked at the policymaking level, or that the City has a policy or practice of ignoring requests for [non-standard] mattresses." *Sanders*, 2018 WL 3117508, at *11.

Plaintiff clearly meets this standard. As part of his complaint, Plaintiff submitted a copy of a New York City Health and Hospitals Correctional Health Services policy, signed by Dr. MacDonald, voiding any referrals for double mattresses and stating that "[p]roviding appropriate bedding to inmates in the NYC jail system is within the purview of the Department of Correction." (*Ruiz I* Compl., at 33.) This is sufficient to state a claim that an official policy was implemented through a "policy statement, ordinance, regulation, or decision" and promulgated by the municipality's policy makers at the DOC. *Anthony*, 339 F.3d at 139; *cf. Rodriguez*, 2018 WL 1276826, at *7. Moreover, Plaintiff alleges a clear causal link between the alleged constitutional deprivation—*i.e.*, inadequate bedding—and the municipal policy. Plaintiff's request for a second medical opinion was specifically denied because "[the DOC] do[es] not issue double mattresses" and, similarly, Dr. Shaaban and Chico had a nurse administrator give Plaintiff a copy of the DOC policy in response to one of Plaintiff's requests for a double mattress. (*Ruiz I* Compl., at 26.)

12

Therefore, Plaintiff has adequately pleaded a *Monell* claim against the City of New York, and Defendants' motion to dismiss that claim is denied.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is denied in *Ruiz I*. Plaintiff has voluntarily withdrawn his claims in *Ruiz II*, and, therefore, Defendants' motion to dismiss is denied as moot.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: August 17, 2018
       Brooklyn, New York